JAMES T. REEDER AND HELEN J. REEDER, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reeder v. Commissioner
Docket No. 11133-77.
United States Tax Court
T.C. Memo 1980-165; 1980 Tax Ct. Memo LEXIS 419; 40 T.C.M. (CCH) 318; T.C.M. (RIA) 80165; May 7, 1980, Filed Paul C. Hendren, for the petitioners. Bryan R. Sullivan, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following *420 deficiencies in petitioners' Federal income taxes: Petitioner
Year
Deficiency
James T. Reeder
1973
$4,243.40
Helen J. Reeder
1973
4,903.55
James T. Reeder
and
1974
4,916.00
Helen J. Reeder
Petitioners have conceded one adjustment. The two issues remaining for our decision are: 1. Whether each petitioner is entitled under section 165(a)[1] to a deduction of $17,643.33 for losses allegedly suffered in 1973 from abandonment of certain real property improvements. 2. Whether each petitioner is entitled under section 167(a) to a depreciation deduction of $655 for improvements allegedly owned by petitioners during 1973. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. James T. Reeder and Helen J. Reeder (petitioners) resided in Monticello, Illinois at the time the petition was filed in this case. Petitioners are presently husband and wife. They were divorced as of December 31, 1973 and, accordingly, *421 filed separate income tax returns for 1973. Petitioners were married during 1974 and filed a joint income tax return for that year. All three returns were filed with the Internal Revenue Service Center, Kensas City, Missouri. Petitioner James Reeder was a farmer and real estate salesman during the years in issue, and petitioner Halen J. Reeder was a teacher during 1973 and 1974. In mid-1970 petitioners learned that a 373-acre farm in Dewitt County, Illinois (hereinafter the Rinehart Farm) was available for sale. The farm consisted of about 281.4 acres of tillable soil and 91.6 acres of timber and other non-tillable areas as well as several improvements including a residence, a cattle barn, a hog farrowing barn, a silo, a machine shed, a garage, a concession building, a well house, two restrooms and other campsite structures. The farm constituted an active and complete livestock and grain farming operation. On October 13, 1970, petitioners executed an agreement to purchase the Rinehart Farm for $117,588.25. About the same time the Illinois Power Company issued a press release announcing its intention to build an electric power plant in Dewitt County and to develop a 5,000 *422 acre lake adjacent to the plant. The proposed power plant and lake site included the property constituting the Rinehart Farm.
On February 26, 1971, the sale of the Rinehart Farm to petitioners was consummated. Upon taking possession of the Rinehart Farm, the petitioners transferred their grain and livestock operations to the farm. They did not live on the Rinehart Farm but employee an individual to oversee the farm's operation. That individual lived in the residence on the farm property. A contemporaneous appraisal of the Rinehart Farm prepared for petitioners indicated that the value of the raw land was in excess of $150,000. Petitioners made the following cost allocations to the improvements at the farm: Residence
$12,000
Silo
2,000
Cattle Barn
8,000
Farrowing Barn
3,000
Machine Shed
5,000
Garage
400
Campsite and concession
improvements
11,000
Total
$41,400
The fair market values of these improvements during the period from October 1979 to June 1971 were: House
$11,000
Silo
1,500
Cattle Barn
5,000
Farrowing Barn
2,000
Machine Shed
3,000
Garage
350
Campsite and concession
improvements: Concession Building
850
Well House
100
Rest Rooms (2)
200
Total
$24,000
*423 Petitioners have conceded that only $1,150 of the campsite-concession improvements are entitled to consideration for deductibility for the abandonment and depreciation claimed in this case. They concede that the additional $9,850 initially allocated to the campsite is not subject to depreciation claimed in 1973 or abandonment in that year since petitioners did not reserve ownership of those improvements. On April 16, 1971, petitioners and Illinois Power Company (hereinafter IPC) executed a purchase agreement for the sale of the Rinehart Farm to IPC. The purchase agreement provided that IPC was to buy the farm, together with the improvements thereon, for $199,072. The agreement further provided: (13) * * * Owner reserves the right to remove all buildings within one year period following delivery of deed. * * * Possession is to be given purchaser upon delivery of deed, subject however to sellers' right to continue to occupy and farm the premises for the balance of the then current crop year under the terms of a written lease agreement for the total cash consideration of one Dollar ($1.00). (14) This instrument contains the entire agreement between the parties and can *424 only be amended or modified by a written agreement signed by the parties. On April 16, 1971 James T. Reeder (petitioner) and IPC executed a farm lease in which IPC agreed to lease the Rinehart Farm to petitioner from April 16, 1971 to February 29, 1972 for $1. The description of land in the lease provides that the farm consists "of approximately 373 acres, together with all improvements and buildings (belonging to the Landlord on the farm." On June 23, 1971, petitioners executed a trust deed to Citizens National Bank of Decatur, as trustee under a land trust, which conveyed the Rinehart Farm in accordance with the purchase agreement with IPC. On April 26, 1972, petitioner and IPC executed a second farm lease in which IPC agreed to lease the Rinehart Farm and an additional 150 acres for $12,455.46 from March 1, 1972 through February 28, 1973. The second farm lease provided, interalia, that: Notwithstanding any provisions herein to the contrary, under the terms of a Purchase Agreement dated April 16, 1971, Tenant retained buildings located on the above described land and therefore assumes all liability and responsibility for the possession, maintenance, removal and *425 payment of taxes therefor, The Dewitt County Treasurer issued real estate tax bills for 1971 and ensuing years to IPC. The real estate tax bills were for assessments on the land and improvements comprising the farm. IPC paid the full amount of the real estate tax bills and did not obtain contribution from petitioners. IPC had no need for the improvements on the Rinehart Farm. Petitioners, at the time of the sale, believed that the improvements could economically be removed from the property and used on other land to continue their livestock and grain operations. It was feasible for petitioners themselves to dismantle, move and reassemble all improvements on the property except the residence. However, to move the residence would require professional assistance. Petitioners subsequently contacted a professional building mover who indicated the following costs for moving the improvements: Dismantling
Reassembly
Buildings
Cost
Transport
Cost
Residence
$5,000
$53 per mile
$8,000
Machine Shed
3,500
53 per mile
1,500
Garage
1,000
53 per mile
500
Farrow Barn
3,500
53 per mile
1,000
Cattle Barn
5,000
53 per mile
5,000
Silo
1,200
20 per mile
2,000
Recreation
Units,
2,500
40 per mile
2,500
Office, etc.
*426 In each instance the cost for the use of a professional mover, not including transportation, exceeded the fair market value of the buildings. Petitioners were unable to locate suitable adjacent property to relocate the Rinehart Farm improvements and, accordingly, did not remove any of the improvements from the property, either by themselves or with professional help. The second lease terminated on March 1, 1973 and was not renewed. On August 10, 1973, IPC terminated petitioners' right to remove the improvements on the farm, except for the residence for which an additional extension of time to remove it was granted to October 1, 1974. Each petitioner on separate income tax returns claims a loss of $17,643.33 in 1973 with respect to the improvements located on the Rinehart Farm. The $17,643.33 was equal to each petitioner's 50 percent share of their original cost allocations to the improvements ($41,400) less accumulated depreciation ($6,113.33) thereon. As previously indicated, petitioners now concede that the total basis should be reduced by $9,850 to reflect the value of certain property not reserved by them in the sale to IPC. This adjustment will also affect the amount *427 of depreciation claimed on each petitioner's 1973 income tax return for depreciation prior to their claimed abandonment of the improvements on the Rinehart Farm. A depreciation deduction of $655 was claimed on the 1973 individual income tax return of each petitioner with respect to improvements located on the Rinehart Farm. The total depreciation claimed in 1973 with respect to the improvements located on the Rinehart Farm ($1,310) was comprised of the following amounts: House
$300.00
Silo
50.00
Barn-Cattle
200.00
Barn-Farrowing
75.00
Shed (machine)
125.00
Garage
10.00
Campsite-concession
(buildings & non-
buildings
550.00
Total
$1,310.00
ULTIMATE FINDINGS OF FACT 1. Petitioners retained ownership of the improvements on the Rinehart Farm when the land was sold to IPC. 2. The abandonment of the improvements by petitioners in 1973 and 1974 was not incidental to the sale of the land. 3. Petitioners are entitled to a combined abandonment loss of $19,303.34, computed in the following manner: Correct Cost
Accumulated
Correct
Allocation
Depreciation
Adjusted Basis
House
$11,000.00
$1,400.00
$ 9,600.00
Silo
1,500.00
233.33
1,266.67
Barn-Cattle
5,000.00
933.33
4,066.67
Barn-Farrowing
2,000.00
350.00
1,650.00
Shed-Machine
3,000.00
583.33
2,416.67
Garage
350.00
46.67
303.33
Total
$19,303.o4
*428 4. Each petitioner is entitled to an abandonment loss of $4,851.67 for 1973 for all buildings except the residence; and they are entitled to a combined abandonment loss of $9,600 for 1974 for the residence. 5. Petitioners are entitled to a total depreciation deduction of $571.25 for the buildings in 1973. Each petitioner's share is $285.63. OPINION The main issues are whether each petitioner is entitled to a deduction of $17,643.33 for losses allegedly suffered in 1973 from the abandonment of certain trade or business real property improvements and whether each petitioner is entitled under section 167(a) to a depreciation deduction of $655 in 1973 for those improvements prior to their abandonment. Preliminary to a determination of petitioners' entitlement to deductions for the claimed abandonment loss and depreciation is the issue of who owned the improvements. Respondent maintains that petitioners did not retain ownership of the improvements on the Rinehart Farm upon its sale to IPC in 1971 but received a mere right to remove the improvements. In respondent's view the right received by petitioners had no value because of the high costs of removal and reassembly of the *429 improvements by a professional mover. Petitioners, on the other hand, contend that they retained ownership of the improvements, that they could not subsequently use them due party to their inability to locate suitable adjacent land and partly to the high costs of removing the residence, and that they abandoned the improvements in 1973. Respondent further argues that if we find that petitioners retained ownership of the improvements, then (1) abandonment was incidental to the sale or (2) if not incidental to the sale, the initial cost allocations are too high in view of the fair market values of the improvements, and therefore they should be reduced.
We think the petitioners did retain ownership of the buildings. It is clear that they initially reserved the right to remove the improvements up to one year after delivery of the deed and that such right was extended through 1973. IPC purchased the property with the expectation of using it for the construction of a nuclear power plant and development of a 5,000 acre lake. Since IPC had no use for the improvement, we believe the purchase price represented an amount paid only for the land. This view is further buttressed by an addendum *430 to the second farm lease from IPC to petitioners in 1972 in which the fact of their continuing ownership of the improvements in reiterated. We find petitioner James T. Reeder's testimony creditable on his initial desire to retain ownership of the improvements and his desire to use at least some of them in grain and livestock operations on other farmland. In these circumstances we do not attribute much importance to the failure of petitioners to pay the real property taxes on the improvements. Accordingly, we conclude that the petitioners retained the improvements on the Rinehart Farm when the underlying land was sold to IPC. See Campbell v. Commissioner, T.C. Memo. 1973-101
Having concluded that the petitioners retained ownership of the improvements, it becomes necessary for us to consider respondent's other contentions. He argues that the petitioners' decision to "abandon" the improvements was an integral part of the sale to IPC. In such a situation the unrecovered basis would not be deductible as an abandonment loss but as an adjustment to the price paid by IPC, thereby reducing petitioners' capital gain on the sale of the Rinehart Farm. Fox v. Commissioner, 50 T.C. 813, 818 (1968), *431 affd. per curiam 25 AFTR 2d 70-891, 70-1 USTC P9373 (9th Cir. 1970); Standard Linen Service, Inc. v. Commissioner, 33 T.C. 1 (1959); Simmons Mill and Lumber Co. v. Commissioner, T.C. Memo. 1963-185. In this regard respondent contends that the petitioners did not truly have an intent to use the improvements since the costs of professional removal and reassembly far exceeded their value. To the contrary, the petitioners argue that they bargained from the start to retain the improvements, that the price paid by IPC reflected only the value of the land, that they intended to move the improvements to nearby farming land but could not find suitable property and discovered after the sale that the cost of professionally moving the residence made removal of the residence economically unfeasible. The other improvements used in their business could have been moved by petitioners without professional aid. As we pointed out in Fox v. Commissioner, supra at 819: We recognize that in many situations of the type involved herein, the sale of the underlying property may be the generating force for a taxpayer's determination as *432 to what to do with the improvements and, in that sense, the sale and the intention subsequently to use the improvements will always reflect a degree of interdependence. In theory, at least, it can be thus argued that under such circumstances the "independence of sale" test (see Standard Linen Service, Inc.,supra at 18) can never be satisfied. But we would not go so far as to require the taxpayer always to show that he would not have made the sale unless he could use the improvements in order to satisfy that test. Nor do we think that the seller-taxpayer's ability to utilize the improvements must be guaranteed in order to sustain an ordinary loss deduction upon abandonment. We do believe it necessary, however, that the taxpayer should have a fixed and meaningful intent to utilize the property which is founded upon sufficient facts to permit the conclusion that there was a reasonable likelihood that such utilization would occur. n4 In short, although there may be some risk of inability on the part of the taxpayer to carry out his plans, the odds should be that such eventuality would not materialize. [Footnote omitted.] In view of petitioners' initial and *433 continuing interest in utilizing the improvements on the Rinehart Farm, the abandonment of such improvements was not an integral part of the sale, but was independent of the petitioners' conveyance of the land to IPC. Petitioner testified that his inability to find suitable land for the improvements was due to the reluctance of surrounding owners to sell their property in anticipation of a speculative land boom induced by the planned power plant construction. Moreover, petitioners were equipped to move all the improvements except the residence by themselves. The subsequent discovery that professional moving costs for the residence would exceed its value does not, in our opinion, negate the reasonable likelihood that removal of the residence was anticipated by petitioners. Thus, we hold that the petitioners are entitled to deduct the unrecovered bases of the improvements upon their abandonment. Section 1.167(a)-8(a)(4), Income Tax Regs; sections 165(a) and 165(c)(1). In determining the proper basis allocations of the improvements, respondent contends that the initial allocations of basis were too high. We agree. The parties have stipulated that the fair market values of the *434 improvements at the time they were acquired totaled $24,500. The purchase price of the Rinehart Farm was $117,588.25. It is clear that the fair market value of both the land and improvements was at least equal to the purchase price. In fact, in an appraisal prepared for petitioners during the course of their negotiations with IPC, the land alone was valued in excess of $150,000 as of February 24, 1971. Such date was contemporaneous to the purchase of the Rinehart Farm by petitioners. Pursuant to section 1.167(a)-5, Income Tax Regs., In the case of the acquisition on or after March 1, 1913, of a combination of depreciable and nondepreciable property for a lump sum, as for example, buildings and land, the basis for depreciation cannot exceed an amount which bears the same proportion to the lump sum as the value of the depreciable property at the time of acquisition bears to the value of the entire property at that time. * * * Therefore, we conclude that the proper basis allocations for the improvements are the stipulated fair market values. Deductions for the abandonment losses in 1973 and 1974 [2] should be computed in accordance with these allocations as reflected in our ultimate *435 findings of fact. Respondent finally argues that the unrecovered cost of the campsite improvements ($1,150) should not be deducted as an abandonment loss deductible under section 1.167(a)-8(a)(4), Income Tax Regs. and section 165(a) since the campsite improvements were not utilized in petitioner's trade or business or in a transaction entered into for profit. Section 165(c)(1) and (2). We agree. Petitioner testified that the campsite improvements were not utilized in their trade or business but that he permitted his tenant-manager to use the site improvements as he desired. Petitioner had no idea what, if any, income was realized by his tenant-manager from operating the campsite. Accordingly, petitioners are not entitled to a deduction for the abandonment of the campsite improvements in 1973 nor are they entitled to depreciation on such improvements. Since we have concluded that the petitioners owned the buildings located on the Rinehart Farm in 1973, they are entitled to depreciation deductions on the buildings in *436 that year. The correct amount of depreciation for 1973 has been determined by multiplying reported depreciation expense for each building times the fraction of the correct allocation over the actual cost allocation, as follows: House
$300.00 X $11,000/$12,000 = $275.00
Silo
50.00 X 1,500/ 2,000 = 37.50
Barn-Cattle
200.00 X 5,000/ 8,000 = 125.00
Barn-Farrowing
75.00 X 2,000/ 3,000 = 50.00
Shed (machine)
125.00 X 3,000/ 5,000 = 75.00
Garage
10.00 X 350/ 400 = 8.75
Total
$571.25
Each petitioner's share of the total allowable depreciation deduction is $285.63. To reflect the concessions of the parties and our conclusions with respect to the disputed issues, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise noted.↩
2. We agree with respondent that the abandonment of the residence did not occur until 1974 when the petitioners' right to remove it from the land expired.↩